## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

**SHIRLEY CRAIN**                                                   **PLAINTIFF**

**V.**                          **CASE NO. 2:20-CV-2049**

**IN VILLAS VERITAS, LLC and**
**LAURA VICTORIA BLAIR**                                            **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Currently before the Court are the following ripe motions: (1) a Motion for Default
Judgment (Doc. 11) filed by Plaintiff Shirley Crain, (2) a Motion for Remand (Doc. 14) also
filed by Ms. Crain, (3) a Motion to Dismiss (Doc. 8) filed by separate Defendant Laura
Victoria Blair, and (4) a Motion to Dismiss (Doc. 9) filed by separate Defendant In Villas
Veritas, LLC ("IVV"). For the reasons stated herein, Ms. Crain's Motions for Default
Judgment and to Remand are **DENIED**, and Ms. Blair's and IVV's Motions to Dismiss are
**GRANTED**.

### I. BACKGROUND

Ms. Crain filed this lawsuit in the Circuit Court of Sebastian County, Arkansas, on
February 13, 2020. (Doc. 3). In the Complaint, she alleges that the separate Defendants
IVV and Ms. Blair are both "travel agents" whom Ms. Crain had used in the past to book
vacations. *Id.* at p. 3. To be clear, however, the separate Defendants are not separate
businesses. Ms. Blair is the sole shareholder and director of IVV, *see* Doc. 27, p. 2, and
Ms. Crain explains in her Complaint that she contacted Ms. Blair through IVV to ask for
her assistance in chartering a yacht for a trip to the Caribbean, *see* Doc. 3, pp. 1–2.
Previously, Ms. Crain had previously used Ms. Blair's travel services to arrange
accommodations for such vacation spots as Italy, Hawaii, and Wyoming. (Doc. 16-1).

1

During Ms. Crain's telephone call to Ms. Blair, the two discussed Ms. Crain's interest in chartering a yacht for New Year's Eve.  Ms. Blair did some research and found a yacht broker who chartered yachts.  Ms. Blair then emailed Ms. Crain a "yachtfolio," or "e-brochure or video of [a] yacht" named "Seanna."  *Id.* at p. 2.

Based on what she saw in the yachtfolio, Ms. Crain decided to charter the yacht. Ms. Blair forwarded Ms. Crain the Charter Agreement ("Agreement") for her signature. The Agreement is attached to the Complaint and lists the following parties: (1) Ms. Crain, as "Charterer," (2) the yacht's owner, Newvida Marine, Ltd. (represented by Robert W. Pereira, who signed the Agreement on the line marked "Owner"), (3) the yacht broker, Camper & Nicholsons USA, Inc. (represented by Stacey Moss, who signed on the line marked "Broker"), and (4) an entity described as "Stakeholder," Nigel Burgess, Inc. (represented by an individual with a typed or stamped illegible name on the line marked "Stakeholder").  *Id.* at pp. 4–11.  The Agreement does not mention IVV or Ms. Blair, and Ms. Crain does not allege that she separately entered into any contract with the Defendants or paid them any funds directly as a result of this chartering transaction.

The name of the vessel listed at the top of first page of the Agreement was "*My Seanna*"—not "Seanna."  According to the contract's terms, Ms. Crain was obligated to immediately pay both a charter fee and an advance-provisioning fee totaling $455,000.00. She signed the Agreement on December 2, 2019, and then wired the funds from her account in Arkansas to an account specified in the Agreement.  After the money changed hands, Ms. Blair sent Ms. Crain another yachtfolio for the vessel "My Seanna."  Ms. Crain could tell from viewing the yachtfolio that this vessel was not the same as the one she thought she had rented.  There had apparently been a mix-up, and instead of sending

2

Ms. Crain a charter agreement for the "Seanna," Ms. Crain was sent an agreement for the "My Seanna," which was an entirely different vessel. Ms. Crain contends that Ms. Blair tried to induce her to accept the "My Seanna," but Ms. Crain refused and insisted on chartering the "Seanna." Unfortunately, the switch was something Ms. Blair "could not arrange," so Ms. Crain cancelled the Charter Agreement and demanded her money back from the yachtbroker and owner. *Id.* at p. 2. The advance-provisioning fee of $105,000.00 and the yachtbroker's commission of $52,500 were returned to Ms. Crain in full. However, the owner of the vessel was only willing to refund $196,000.00 of the remaining funds to Ms. Crain, leaving her short $101,500.00. In the instant lawsuit, Ms. Crain sues IVV and Ms. Blair for negligence and demands $101,500.00 in damages.

In state court both Defendants were served with process, but Ms. Blair was served before IVV. When Ms. Blair failed to file a timely answer, Ms. Crain filed a motion for default judgment in state court, but before that motion could be ruled upon, IVV was served and removed the case to this Court. Thereafter, IVV and Ms. Blair filed individual Motions to Dismiss (Docs. 8 & 9) on this Court's docket. Ms. Crain refiled the Motion for Default Judgment that she had originally filed against Ms. Blair in state court (Doc. 11), arguing that Ms. Blair's late response to the Complaint in this Court cannot cure her original default below. Next, Ms. Crain filed a Motion for Remand (Doc. 14), maintaining that since Ms. Blair never appeared in the state court proceeding, she failed to affirmatively consent to IVV's removal of the case, and the matter should be remanded on that basis. As all pending motions are now ripe, the Court will first take up Ms. Crain's Motions for Default Judgment and Remand before turning to Ms. Blair's and IVV's Motions to Dismiss.

## II. DISCUSSION

### A. Motion for Default Judgment (Doc. 11)

The Motion for Default Judgment as to Ms. Blair is **DENIED**. Procedurally, it is improper for Ms. Crain to request a default judgment before the entry of default under Federal Rule of Civil Procedure 55(a). "Entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (internal quotation marks omitted). Here, the Clerk declined to enter a default under Rule 55(a). To the extent the Court may construe this Motion as a request to direct the Clerk to enter a default, the Court declines to do so.

Ms. Blair and IVV are co-Defendants who are allegedly liable to Ms. Crain under identical facts and identical theories of liability. IVV is a limited liability company, and Ms. Blair is its sole member. Therefore, the interests of IVV and Ms. Blair are aligned in this lawsuit, if not identical. Further, they share the same lawyer and are presenting a common defense. According to Wright & Miller:

> [I]f [a] defendant appears and indicates a desire to contest the action, the court can exercise its discretion and refuse to enter a default. This approach is in line with the general policy that whenever there is doubt whether a default should be entered, the court ought to allow the case to be tried on the merits.

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2686 (4th ed. 2020).

Ms. Blair was served in state court before IVV, on February 20, 2020. Her answer was due 30 days later, on March 21. *See* Ark. R. Civ. P. 12(a)(1). Since March 21 fell on a weekend, the answer was due the first business day following that, which was March 23. *See* Ark. R. Civ. P. 6(a). Four days later, on March 27, Ms. Crain filed a motion for

4

default judgment in state court, though Ms. Blair claims it was never served on her. *See* Doc. 17, p. 21. In the meantime, IVV was served on March 17. Ms. Blair and IVV retained the same counsel, and the case was removed to this Court on April 2. Ms. Blair and IVV each filed separate, though nearly identical, Motions to Dismiss in this Court on April 7. Accordingly, Ms. Blair filed a responsive pleading in this Court exactly 15 days after her response was originally due in state court. This period of delay is relatively brief, and the Court finds that the entry of default against Ms. Blair would be improper given that: (1) Ms. Blair wishes to mount a defense, (2) the response of her co-Defendant, whose position in this lawsuit is closely aligned with (if not identical to) Ms. Blair's, was timely filed, and (3) Ms. Crain does not claim in her Motion that she will be prejudiced in any way by the Court's acceptance of Ms. Blair's late response

### B. Motion for Remand (Doc. 14)

Ms. Crain argues in her Motion for Remand that the case was not properly removed by both Defendants. At the time of removal, Ms. Blair had been served with the Complaint but had not filed a timely answer in state court. IVV was served after Ms. Blair and timely removed the case to this Court. The Notice of Removal states: "Counsel for In Villas Veritas is also counsel for Defendant Laura Ms. Blair and is authorized to state that Defendant Laura Blair consents to removal of this matter to federal court." (Doc. 1, p. 2).

Ms. Crain points out that this statement by defense counsel should not satisfy the unanimity requirement for removal. After all, IVV filed the Notice of Removal, and Ms. Blair did not sign it. The Court takes Ms. Crain's point but declines to apply the unanimity requirement in a "hypertechnical and unrealistic manner." *Bradley v. Maryland Cas. Co.,* 382 F.2d 415, 419 (8th Cir. 1967). Moreover, the Eighth Circuit instructs that "it is not

necessary for all defendants to actually sign the notice of removal so long as there is 'some timely filed written indication from each served defendant . . . that the defendant has actually consented to the removal.'" *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 932 (8th Cir. 2012) (quoting *Pritchett v. Cottrell, Inc.,* 512 F.3d 1057, 1062 (8th Cir. 2008)) (internal quotations omitted). The Court finds that defense counsel's affirmation in the Notice of Removal satisfies the unanimity requirement and constitutes a "timely filed written indication" of Ms. Blair's consent.[1] The Motion for Remand is **DENIED**.

### C. Motions to Dismiss (Docs. 8 & 9)

Ms. Blair and IVV argue in their respective Motions to Dismiss that they are not subject to the Court's personal jurisdiction because they lack minimum contacts with the forum. "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). However, the plaintiff bears the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Wells Dairy*, 607 F.3d at 518. "The plaintiff's prima facie showing must be

---

[1] Furthermore, as explained previously, IVV is Blair's company, and the two Defendants' interests and defenses in this lawsuit are virtually identical.

tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

The Arkansas long-arm statute authorizes the exercise of personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101. Therefore, the only question here is whether the exercise of personal jurisdiction over Defendants is constitutionally permissible. The Due Process Clause allows courts to exercise personal jurisdiction only when a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This standard "presaged the development of two categories of personal jurisdiction:" general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

General jurisdiction allows a court to hear "any and all claims" against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). In the case of a defendant corporation, the Due Process Clause permits a court to exercise general jurisdiction only when the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (quotation omitted). "The place of incorporation and principal place of business" are the "paradigm bases for general jurisdiction" over a corporation. *Daimler*, 134 S. Ct. at 760 (alteration and quotation omitted).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131

7

S. Ct. at 2851 (alteration and quotation omitted). Its exercise is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation omitted).

The Eighth Circuit has crafted a five-part test to help the district courts determine whether a defendant has minimum contacts such that a suit does not offend traditional notions of fair play and substantial justice: (i) the nature and quality of contacts with the forum state; (ii) the quantity of such contacts; (iii) the relation of the cause of action to the contacts; (iv) the interest of the forum state in providing a forum for its residents; and (v) the convenience of the parties. *See Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The last two factors are of secondary importance, *id.*, and the third factor applies only in the specific jurisdiction context. *See Wilcosky v. Swift Transp. Corp.*, 2008 WL 2562959, at *2 (W.D. Ark. June 24, 2008).

In the case at bar, Ms. Crain contends that specific jurisdiction exists over the Defendants.[2] The Court disagrees. The only contacts with Arkansas at issue in this case

---

[2] Ms. Crain further claims that she "cannot affirmatively state whether general jurisdiction exists without the opportunity to engage in jurisdictional discovery." (Doc. 16, p. 4 n.1). However, Crain agrees that IVV and Blair are not citizens of Arkansas, and it is unlikely, given the allegations in the Complaint and the briefing on the Motions to Dismiss, that the Defendants' contacts with Arkansas could be described as "continuous and systematic." *Goodyear*, 131 S. Ct. at 2851. In any event, Ms. Crain has made no attempt to set forth a prima facie case for general personal jurisdiction.

are the following: Ms. Crain's phone call to Ms. Blair requesting her help in finding a yachtbroker; emails from Ms. Blair to Ms. Crain regarding the yacht; emails from Ms. Blair to Ms. Crain concerning the Charter Agreement—to which Ms. Blair and IVV were not parties; and a wire transfer from Ms. Crain's account in Arkansas to an account listed in the Charter Agreement that was unaffiliated with either Ms. Blair or IVV.[3]

These contacts are plainly insufficient in nature, quality, and quantity to confer personal jurisdiction over Ms. Blair and IVV. First, Ms. Crain's call to Ms. Blair from Arkansas and her act of wiring the charter fees to the yachtbroker from Arkansas are entirely irrelevant to the analysis, as specific jurisdiction concerns "the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Second, the Eighth Circuit has held that an out-of-state defendant company's emails, phone calls, and even wire transfers to a plaintiff located within the forum are "the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011). Finally, while Arkansas has an interest in providing a forum for its

---

[3] The Court rejects Crain's "course of dealing" argument that claims that Ms. Blair's and IVV's past travel-related dealings with Ms. Crain—all unrelated to the instant dispute— should count as evidence of the Defendants' purposeful availment of this forum. As the Seventh Circuit explained in *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997):

> [W]hen conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render them liable to suit there. Unless their contacts are continuous and systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another.

9

residents, this interest is far outweighed by the importance of ensuring due process for all litigants.

For the above reasons, the Court finds that Ms. Crain has failed to meet her burden of establishing a prima facie case for personal jurisdiction over either Defendant— whether under a theory of specific jurisdiction or general jurisdiction. Accordingly, the case must be dismissed without prejudice pursuant to Rule 12(b)(2).[4]

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Shirley Crain's Motion for Default Judgment (Doc. 11) and Motion for Remand (Doc. 14) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Laura Victoria Blair's Motion to Dismiss (Doc. 8) and Defendant In Villas Veritas, LLC's Motion to Dismiss (Doc. 9) are both **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this _19th_ day of May, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[4] As the Court is dismissing the case for lack of personal jurisdiction, it need not consider Defendants' alternate arguments made pursuant to Rule 12(b)(6).